## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ABRAN PINO,

        Plaintiff,

v.                                                                    CIV No. 20-0933 KBM

KILOLO KIJAKAZI,[1]
Acting Commissioner of Social Security,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision with Supporting Memorandum (*Doc. 23*), filed on May 25, 2021. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 5*; *10*; *11.* Having considered the record, submissions of counsel, and the relevant law, the Court finds Plaintiff's motion is well-taken and will be granted.

## I.      Procedural History

On November 22, 2017, and December 15, 2017, respectively, Mr. Abran Pino ("Plaintiff") filed applications with the Social Security Administration for a period of disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA") and for Supplemental Security Income ("SSI") under Title XVI of the SSA.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. § 405(g).

Administrative Record[2] (AR) at 242-54. Plaintiff later dismissed his DIB claim, pursuing only his SSI claim. *See* AR at 38. Further, while Plaintiff initially alleged a disability onset date of August 1, 2008, he amended that date to November 17, 2017. *See* AR at 38. Disability Determination Services determined that Plaintiff was not disabled both initially (AR at 60-104) and on reconsideration (AR at 106-46). Plaintiff requested a hearing with an Administrative Law Judge ("ALJ") on the merits of his applications. AR at 180-82.

At a November 18, 2019 hearing before ALJ Jennifer M. Fellabaum, Plaintiff was represented by counsel, Crystal Flynn. AR at 37. Both Plaintiff and a vocational expert testified. *See* AR at 35-57. ALJ Fellabaum issued an unfavorable decision on December 31, 2019. AR at 13-27. Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 238-41), which the Council denied on July 13, 2020 (AR at 1-11). Consequently, the ALJ's decision became the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

## II.     Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-

---

[2] Document 20-1 contains the sealed Administrative Record. *See Doc. 20-1*. The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of his residual functional capacity ("RFC"), he is unable to perform his past relevant work. 20 C.F.R § 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" Plaintiff retains sufficient RFC "to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ Fellabaum found that Plaintiff "ha[d] not engaged in substantial gainful activity since November 17, 2017, the application date and amended alleged onset date." AR at 15 (citing 20 C.F.R. § 416.971-976). At Step Two, she concluded that Plaintiff had "the following severe impairments: bilateral should[er] degenerative joint disease, degenerative disc disease, polyarthralgia, and

polycythemia." AR at 15 (citing 20 C.F.R. § 416.920(c)). The ALJ also found that

Plaintiff had the following non-severe impairments: obstructive sleep apnea and anxiety.

AR at 16.

At Step Three, ALJ Fellabaum found that Plaintiff "does not have an impairment

or combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 17 (citing 20

C.F.R. §§ 416.920(d), 416.925, 416.926). At Step Four, the ALJ considered the

evidence of record and found that Plaintiff:

> [h]as the [RFC] to perform sedentary work as defined in 20 [C.F.R.
> §] 416.967(a). In addition, [Plaintiff] can occasionally stoop, crouch, kneel,
> crawl, and climb ramps and stairs. [Plaintiff] can never climb ladders, ropes,
> or scaffolds, or be exposed to unprotected heights or hazardous machinery.
> [Plaintiff] can rarely reach overhead bilaterally, defined as less than 10% of
> the workday. [Plaintiff] can frequently reach in other directions bilaterally.
> He can occasionally use foot controls bilaterally.

AR at 18. ALJ Fellabaum found that Plaintiff "ha[d] no past relevant work." AR at 24

(citing 20 C.F.R. § 416.965). She concluded that that he can perform the jobs of

Addresser (DOT 209.587-010), Callout operator (DOT 237.367-014), Cutter and paster

(DOT 249.587-014), Document preparer (DOT 249.587-018), Surveillance systems

monitor (DOT 379.367-010), and Tube operator (DOT 239.687-014). AR at 25-26.

Consequently, the ALJ ultimately determined that Plaintiff "has not been under a

disability, as defined in the Social Security Act, since November 17, 2017, the date the

application was filed and the amended alleged onset date of disability." AR at 26 (citing

20 C.F.R. § 416.920(g)).

III.    **Legal Standard**

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

IV.    **Discussion**

Plaintiff raises two issues in his motion. He argues that "[t]he ALJ's RFC calculation is not supported by substantial evidence because: (1) "she failed to properly

evaluate the opinion of Staci Oldham, CNP" and (2) "she failed to reconcile her step two

findings with the limitations she assessed . . . ." *Doc. 23* at 1.  For the reasons that

follow, the Court finds that remand is warranted.

### A.    How the ALJ considers medical opinions and prior administrative findings.

The parties agree that because Plaintiff filed his claim after March 27, 2017, the

ALJ was required to evaluate the medical opinions and prior administrative findings

under the revised regulations found in 20 C.F.R. § 416.920c. *See Docs. 23* at 13; *27* at

10-11; *see also* AR at 18 (explanation by the ALJ that she "considered the medical

opinion(s) and prior administrative medical finding(s) in accordance with the

requirements of 20 [C.F.R. §] 416.920c"). Claims that were filed prior to March 27, 2017,

were evaluated under the previous regulations found in 20 C.F.R. § 416.920. The

revised regulations differ from the prior rule in several relevant respects.

First, the current regulations expand on the definition of an acceptable medical

source and include licensed physicians, licensed psychologists, and, of particular

relevance here, licensed advanced practice nurses. *See* 20 C.F.R. § 416.902. Second,

under the prior rules, medical opinions were weighted differently depending on the

medical source's relationship to the claimant. *See* 20 C.F.R. § 416.927(c)(1)-(2)

(according "more weight" to the opinions of an examining source than a non-examining

source and "controlling weight" to a treating source's well-supported opinions that are

"not inconsistent with the other substantial evidence" of record). The current rules place

no special weight on opinions offered by a treating source or otherwise. *See* 20 C.F.R.

§ 416.920c(a) (providing that "[w]e will not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)"). "Instead, medical opinions and [prior administrative medical] findings are evaluated for their persuasiveness according to a uniform set of considerations." *Purdy v. Berryhill*, 887 F.3d 7, 13 n.8 (1st Cir. 2018) (citing 20 C.F.R. § 416.920c).

The evaluation of these considerations comprises the third relevant difference between the two sets of regulations. While the considerations "are similar under the prior and current rules, *compare* 20 C.F.R. § 416.920c(c), *with* 20 C.F.R. § 416.927(c), the prioritization of the factors and requirements for articulating how an adjudicator consider[s] each factor differ." *Silva v. Saul*, No. CV 19-0913 WJ/KK, 2020 WL 4220862, at *4 (D.N.M. July 23, 2020). The five factors to consider include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 416.920c(c)(1)-(5). Previously, an adjudicator gave special consideration to a source's relationship to a client. *See, e.g.*, *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004); *Silva*, 2020 WL 4220862, at *4. The revised regulations, however, provide that the factors of supportability and consistency are "[t]he most important factors" in considering "the persuasiveness of medical opinions and prior administrative findings . . . ." 20 C.F.R. § 416.920c(a). In determining an opinion's persuasiveness, an ALJ must "explain how she considered the supportability and consistency factors . . . but [is] not required to[] explain how she considered the [remaining] factors . . . ." 20 C.F.R. § 416.920c(b)(2), (c)(3)-(5).

As before, ALJs must "consider all relevant evidence in the case record in reaching their disability determination." *Silva*, 2020 WL 4220862, at *4 (citing 20 C.F.R. §§ 404.1520b, 416.920b). "Although an ALJ is not required to discuss every piece of

evidence, '[t]he record must demonstrate that the ALJ considered all of the evidence[.]'" *Id.* (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)). "The ALJ must discuss not only the evidence supporting her decision but also 'the uncontroverted evidence she chooses not to rely upon, as well as significantly probative evidence she rejects.'" *Id.* (quoting *Clifton*, 79 F.3d at 1010).

**B.      The ALJ did not commit reversible error in analyzing the opinions of CNP Staci Oldham.**

Plaintiff alleges that ALJ Fellabaum erred by "improperly rejecting" the opinions of his treating provider, Certified Nurse Practitioner ("CNP") Staci Oldham, and by failing to provide "legitimate rationale" for discrediting her opinions. *Doc. 23* at 14. CNP Oldham evaluated and treated Plaintiff for ongoing pain in his back, joints, and muscles. *See, e.g.*, AR at 555-56. She assessed secondary polycythemia,[3] thrombocytopenia,[4]

---

[3] Secondary Polycythemia "is a rare condition in which [the] body produces an excess amount of red blood cells[,]" which thickens the blood and causes an increased risk of stroke. *What is Secondary Polycythemia?*, WebMD, http://www.webmd.com/a-to-z-guides/what-is-secondary-polycythemia (last visited Jan. 18, 2022).

[4] Thrombocytopenia occurs when a person does not have sufficient platelets in their blood. *Thrombocytopenia and ITP*, WebMD, https://www.webmd.com/a-to-z-guides/thrombocytopenia-symptoms-causes-treatments#1 (last visited Jan. 18, 2022). If severe, thrombocytopenia can cause a person to "bleed spontaneously in [their] eyes, gums, or bladder." *Id.*

chronic urticaria,[5] polyarthalgia,[67] and polymyalgia,[8] as well as chronic pain in both shoulders, the lower back, the midline thoracic back, and both knees. AR at 555, 558, 562-63.

CNP Oldham completed a Physical Impairment Questionnaire on October 19, 2017, and a Physical Assessment on February 7, 2018, both of which contain her opinions as to Plaintiff's physical impairments and functional limitations. *See* AR at 384-86, 527-28. In her decision, the ALJ discussed the opinions contained in these documents. AR at 24 (citing AR at 384-86, 527-28). She recounted, for instance, that CNP Oldham opined in her 2017 Questionnaire that Plaintiff's symptoms from his physical impairments "[c]onstantly" interfere with his ability to attend and concentrate for simple work-related tasks. AR at 24. She also highlighted CNP Oldham's findings that Plaintiff could only use his hands and fingers for 10% of the workday and could never reach, could walk only one block, could sit for 15 minutes at one time, could stand for 30 minutes at one time, and could sit, stand, or walk for a combined total of four hours in

---

[5] "[U]rticaria, also known as hives, is an outbreak of pale red bumps or welts on the skin that appear suddenly." *Hives and Your Skin,* WebMD https://www.webmd.com/skin-problems-and-treatments/guide/hives-urticaria-angioedema (last visited Jan. 18, 2022). CNP Oldham indicated that Plaintiff's urticaria was "most likely related to [his] polycythemia." AR at 558.

[6] "People with polyarthralgia may have transient, intermittent, or persistent pain in multiple joints." *What is Polyarthralgia?*, Healthline, https://healthline.com/health/polyarthralgia (last visited Jan. 29, 2022).

[7] CNP Oldham's October 17, 2017 Treatment Notes indicate that Plaintiff presents with "uticaria" and "polyarthralgia." AR at 555. The referenced conditions, however, appear to be misspellings of "urticaria" and "polyarthralgia." *See* AR at 558

[8] Polymyalgia Rheumatica is "an infrequently occurring, inflammatory condition that causes pain or aching in the large muscle groups, especially around the shoulders and hips." *Polymyalgia Rheumatica and Temporal Arteritis*, WebMD, https://www.webmd.com/arthritis/polymyalgia-rheumatica-temporal-arterits (last visited on Jan. 29, 2022).

an eight-hour workday. AR at 24. The ALJ further observed that, according to CNP Oldham, Plaintiff requires 10- to 15-minute breaks every hour and would be absent more than four times per month. AR at 24.

Following her summary of the 2017 Questionnaire, the ALJ explained that CNP Oldham's opinions were "not persuasive." AR at 24. She specified that she found the questionnaire "inconsistent with Ms. Oldham's treatment notes since 2015." AR at 24. The ALJ further indicated that she found no evidence to support the "standing/walking limitations proposed" by CNP Oldham. AR at 24. Finally, she emphasized that Plaintiff "has good strength in the extremities." AR at 24.

The ALJ also outlined CNP Oldham's 2018 Physical Assessment in which CNP Oldham opined that Plaintiff could walk two blocks; could sit, stand, or walk for three hours total in a workday; could never reach; required 15-minute breaks every 30-60 minutes; and would be absent from work more than four times per month. AR at 24. Again, the ALJ concluded that CNP Oldham's opinions were "not persuasive[,]" reasoning that the 2018 Physical "[A]ssessment is inconsistent with the record and not supported with objective evidence." AR at 24.

Plaintiff submits that, despite these explanations by the ALJ, she failed to provide adequate reasons for her rejection of CNP Oldham's opinions. *Doc. 23* at 14. He submits that "[u]nder the guise of analysis, . . . [the ALJ] referenced unspecified inconsistencies with CNP Oldham's treatment notes and utilized the boilerplate language of 'inconsistent with the record and not supported with objective evidence.'" *Id.* (citing AR at 24).

In the Court's view, the ALJ's summary of CNP Oldham's opinions was accurate, albeit not entirely comprehensive. For instance, the ALJ did *not* mention CNP Oldham's opinion, contained in both the 2017 Questionnaire and the 2018 Physical Assessment, that Plaintiff needed to recline or lie down in excess of typical work breaks. *Compare* AR at 24, *with* AR at 384, 527. Nor did she address CNP Oldham's 2017 opinion that Plaintiff "need[s] a job which permits shifting positions at will from sitting, standing or walking."[9] *Compare* AR at 24, *with* AR at 384. Still, an ALJ need not address every finding of a medical source in every circumstance, and Plaintiff's motion focuses on the ALJ's alleged failure to provide an adequate analysis of the persuasiveness of CNP Oldman's opinions under 20 C.F.R. § 416.920c.

Under 20 C.F.R. § 416.920c, CNP Oldham's opinions were not entitled to controlling weight despite her role as Plaintiff's primary care provider. *See* 20 C.F.R. § 416.920c. However, as with all medical opinions, the ALJ was required to articulate *how* she considered CNP Oldham's opinions and whether she found them persuasive. *See id*. Although the ALJ explicitly discussed CNP Oldham's opinions, reciting many of them in her decision, the Court must be satisfied that she sufficiently articulated *how* she considered those opinions with regard to two critical factors: consistency and supportability. *See* 20 C.F.R. § 416.920(b)(2). Notably, "there is a difference between [an ALJ] considering evidence and articulating *how* [she] consider[ed] evidence."

---

[9] The ALJ determined that Plaintiff retained the RFC to perform sedentary work, but, as Plaintiff observes, she did not include any requirement for alternating sitting and standing. *Doc. 23* at 14 (citing AR at 18). Plaintiff submits that it was reversible error to omit such a limitation. *Id*. While Plaintiff's assertion is a critical one, the Court finds it better addressed in the context of its analysis of the ALJ's treatment of Dr. Ward's opinion, who likewise opined that Plaintiff required an alternating sit/stand opinion. As such, the Court will defer the issue for consideration in that context.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858, 2017 WL 168819 (Jan. 18, 2017) (emphasis added). Thus, the question here is whether the ALJ adequately articulated *how* she considered the supportability and consistency of CNP Oldham's opinions.

The supportability factor examines how well a medical source supported her own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. § 416.920c(c)(1). The consistency factor, in turn, calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. § 416.920c(c)(2). While Plaintiff concedes that the ALJ was at liberty to discredit CNP Oldham's opinions, he contends that she failed to articulate *how* she found those opinions inconsistent or unsupported. *Doc. 23* at 14. Plaintiff suggests that the ALJ was required to "give good reasons in . . . [her] decision for the weight assigned to a treating . . . opinion." *Id.* at 13 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)). He maintains that she failed to offer good reasons and that her analysis "does not even meet the less strict standards previously implemented by the Agency." *Doc. 23* at 15 (citing *Bradley v. Berryhill*, No. 17cv0658 STV, 2018 WL 6168066, at *10 (D. Colo. Nov. 26, 2018) for the proposition that that the former regulations required an ALJ to "build an accurate and logical bridge between the evidence and his conclusion").

The Commissioner counters, arguing that the applicable regulations no longer require an ALJ to provide "good reasons" for her assessment of a medical opinion. *See Doc. 27* at 11. That is, while the former regulations required the articulation of "good reasons" for the weight afforded to a treating source opinion, *see* 20 C.F.R.

§ 416.927(c)(2) (2016), the Commissioner suggests that the new regulations require only that the ALJ articulate *how persuasive* she found the opinions based upon the factors of consistency and supportability. *Id.* at 12 (citing 20 C.F.R. § 416.920c(b)(2)). The Commissioner insists that the ALJ's articulation was "consistent with the revised regulations for evaluating medical evidence." *Id.* at 10.

The ALJ clearly stated that she did not find CNP Oldham's opinions persuasive. AR at 24. She also offered at least some degree of rationale for this determination, referencing the two requisite factors of consistency and supportability. AR at 24. As to the 2017 Questionnaire, she found CNP Oldham's opinions "*inconsistent* with [her] treatment notes since 2015." AR at 24 (emphasis added). She also found the 2017 opinions *unsupported* because "there [was] no evidence for the standing/walking limitations proposed in the questionnaire" and because Plaintiff had "good strength in his extremities." AR at 24. As to CNP Oldham's 2018 Physical Assessment, the ALJ again concluded that "[t]he assessment [was] *inconsistent* with the record and *not supported* with objective evidence." AR at 24 (emphasis added). In the Court's view, the ALJ followed the method of analysis dictated by 20 C.F.R. § 416.920c, at least in form.

Still, Plaintiff contends that the ALJ's analysis was insufficient because she only referenced "unspecified inconsistencies" with treatment notes and used "boilerplate language" in analyzing the supportability factor. *Doc. 23* at 14. Plaintiff emphasizes that the ALJ failed to point to any specific inconsistencies in CNP Oldham's treatment notes. Further, she submits that the ALJ failed to provide a sufficiently specific analysis of either requisite factor. *Doc. 28* at 1.

To be sure, an ALJ must not leave a subsequent reviewer to scour the record for reasons to affirm her decision. *Martinez-Butler v. Colvin*, No. 14-CV-01130-MJW, 2015 WL 5693558, at *5 (D. Colo. Sept. 29, 2015) (explaining that "[t]he court is not empowered to invent ad-hoc justifications for the ALJ's conclusions, nor is the court authorized or inclined to scour the administrative record looking for evidence that may support an ALJ's conclusory finding"). Instead, the ALJ must – at the very least – provide an explanation that allows a reviewing court to follow her reasoning and communicates *how* she considered the factors of supportability and consistency. *See* 20 C.F.R. § 416.920c. Merely describing an opinion as "inconsistent" or "unsupported" does not suffice. Here, though, the ALJ offered slightly more in the way of analysis.

### i.   Consistency Factor

Plaintiff maintains that the ALJ's analysis of the consistency factor is insufficient and that, in contrast to the ALJ's determination, CNP Oldham's opinions are "consistently supported by her treatment notes." *Doc. 23* at 17. Plaintiff submits that the treatment notes document his ongoing joint pain, back pain, muscle pain, muscle weakness, and fatigue during the relevant period, which necessitated an alternating sit/stand option and unscheduled work breaks and absences. *Doc. 23* at 17 (citing AR 555-78, 653-55). The Court's own examination of CNP Oldham's treatment notes confirms that Plaintiff's joint and back pain were well-documented during his treatment by CNP Oldham and that, at least according to her findings, they produced a frequent shifting of postural positions and a persistent gait disturbance. *See, e.g.*, AR at 560-63 (2/8/2018 visit documenting that joint pain is aggravated by walking and sitting and requires Plaintiff to "change[] position every few minutes to get comfortable" and

14

produces gait disturbance); AR at 564-67 (4/4/2018 visit noting average pain level of 8/10 and slow gait with limp); AR at 568-72 (5/7/2018 visit indicating Plaintiff is in moderate distress, must stand and move about due to pain, has a severely reduced range of motion in the back, and limps when walking); AR at 573-76 (6/14/2018 visit observing that Plaintiff is "uncomfortable with movement," has "neurologic" gait, and must "stand with exam reporting back hurts with sitting"); AR at 577-80 (1/16/2019 visit documenting that Plaintiff moves slowly with a limp and requested a cane due to hip and knee pain). Despite these findings that appear consistent with some aspects of CNP Oldham's opinions, the Court must resist the temptation to reweigh the evidence and restrict its analysis to the adequacy of the ALJ's own persuasiveness assessment.

Turning to a record that the ALJ herself highlighted in her decision, the Commissioner urges the Court to consider CNP Oldham's treatment note from October 17, 2017, a month before Plaintiff's amended alleged onset date and two days prior to the completion of the 2017 Questionnaire. *Doc. 27* at 13. The Commissioner maintains that this note is *inconsistent* with CNP Oldham's "extreme opinions." *Id*. Significantly, the ALJ herself emphasized that although Plaintiff complained of joint pain, he demonstrated a "normal gait" and "normal spine" at this October 17, 2017 visit with CNP Oldham.[10] AR at 21 (citing AR at 555-59).

---

[10] The Court acknowledges that this pre-onset-date visit was the only visit at which CNP Oldham reported that Plaintiff had a "normal" gait. *Compare* AR at 555-58, *with* AR 560-80. Further, at that October 17, 2017 visit, CNP Oldham also noted that Plaintiff had back pain and joint pain that necessitated an increased dosage of meloxicam to "reduce pain" and "additional hydrocodone to help [him] get sleep." AR at 555-58. And CNP Oldham strongly recommended physical therapy. AR at 558. Although it is a close call and the Court might have reached a different conclusion as to the consistency of CNP Oldham's treatment notes and opinions, "more than a mere scintilla" of evidence supports the ALJ's finding of inconsistency. In addition to CNP Oldham's October 17, 2017 observation of a normal gait, the ALJ also references

Plaintiff contends that the ALJ's separate mention of the October 17, 2017 treatment note within her general summary of his records from all medical sources fails to satisfy 20 C.F.R. § 416.920c(b)(1), which, he submits, required her to "consider[] the medical opinions . . . from [a] medical source *together in a single analysis*." *Doc. 23* at 16 (quoting 20 C.F.R. § 416.920c(b)(1)) (internal quotes omitted). But the Commissioner again asserts that Plaintiff misunderstands the law. *Doc. 27* at 16. She explains that § 416.920c(b)(1) "addresses an ALJ's consideration of *multiple* medical opinions or prior administrative medical findings *from the same medical source*." *Doc. 24* at 16 (citing 20 C.F.R. § 416.920c(b)(1)). The Commissioner interprets § 416.920c(b)(1) to provide that an ALJ may address multiple opinions or administrative findings in a single analysis instead rather than articulating how she considered each independent opinion or finding. *Doc. 27* at 16. In other words, rather than adding to the ALJ's administrative burden, the Commissioner submits that this rule is intended to eliminate the need to repeat findings made elsewhere in the decision. *Id*.

The Court is persuaded by the Commissioner's interpretation of § 416.920c(b)(1) and is satisfied that the "articulation requirement applies for each source, but not for each opinion of that source separately." *See Joshua J.V. v. Saul*, No. CV 20-11060JWL, 2020 WL 7695653, at *5 (D. Kan. Dec. 28, 2020). It follows that the ALJ was required to articulate how she generally considered the consistency and supportability of CNP

_____

records from at least one other medical source who likewise observed a normal gait. *See e.g.*, AR at 21-22 (citing AR at 533) (observation by Orlando Ortiz, M.D. on 3/25/2018, that Plaintiff's gait was "normal, steady").

Oldham's opinions, but she was not required to do so in a single analysis or as to each individual opinion or finding offered by CNP Oldham. *See* 20 C.F.R. § 416.920c(b)(1).

The Commissioner points to other alleged inconsistencies between CNP Oldham's treatment notes and her opinions, most notably her May 7, 2018 report that Plaintiff "ha[d] been doing a bit more than typical – digging and making ramps." *Doc 27* at 7 (citing AR at 568). Digging and ramp building appear to be at odds with the disabling limitations opined by CNP Oldham, including the inability to reach for any amount of time, to use his hands more than 10% of the time, to walk more than a block, or to stand more than 30 minutes. Although the ALJ did not explicitly reference Plaintiff's digging or ramp making in her decision, it could reasonably be characterized as inconsistent with CNP Oldham's opinions.

The Court agrees with the Commissioner that it is a "close call," especially where the ALJ's failed to specify the treatment notes she found inconsistent with CNP Oldham's opinions. Yet, the Court is cognizant of the Social Security Administration's cautionary explanation for amending its regulations:

> Courts reviewing claims under [the prior] rules have focused more on whether [the ALJ] sufficiently articulated the weight [they] gave treating source opinions, rather than on whether substantial evidence support[ed the] final decision. As the Administrative Conference of the United States' (ACUS) Final Report explains, these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standards of review, which is intended to be [a] highly deferential standard to [the Agency].

82 Fed. Reg. at 5853. Without reweighing the evidence, the Court finds that the ALJ has provided the minimum level of articulation necessary to supply sufficient rationale for her persuasiveness analysis as to CNP Oldham's opinions. The ALJ's discussion of the

October 17, 2017 findings of a "normal gait" and "normal spine," coupled with her finding that CNP Oldham's treatment notes are inconsistent with her opinions, provide substantial evidence for the ALJ's consistency analysis, though only barely.

### ii.   Supportability Factor

As to the supportability factor, the ALJ determined that CNP Oldham's opinions were "unsupported" by objective evidence. AR at 24. She specified that there was "no evidence for the standing/walking limitations proposed in the questionnaire . . . ." and noted that Plaintiff had "good strength in his extremities." AR at 24. The Commissioner urges the Court to consider the ALJ's supportability analysis in the context of her restrictive RFC finding, an approach the Court finds appropriate. *See Doc. 27* at 13.

The ALJ determined that Plaintiff was capable of only a reduced range of sedentary work. AR at 20-22. Sedentary work involves primarily sitting, with "occasional" walking and standing, lifting no more than 10 pounds at a time, and occasionally lifting light objects, such as "docket files, ledgers, and small tools." *See* 20 C.F.R. § 416.967(a). But the ALJ restricted Plaintiff even further to "rarely reach[ing] overhead bilaterally" and only "occasionally us[ing] foot controls bilaterally." AR at 18. Despite this highly-restrictive RFC, the ALJ found that CNP Oldham's disabling opinions went too far. The Court can infer that, despite significant exertional limitations, the ALJ found that Plaintiff could walk more than a single block, sit for more than 15 minutes, use his hands and fingers for more than 10% of the day, maintain work without shifting positions at will, or attend work without being absent more than four times per month.

Notably, the Commissioner maintains that references in CNP Oldham's records suggests that CNP Oldham herself "may not have fully believed" her own disabling

limitations or, at minimum, that her "conclusions were based, at least in part on Plaintiff's subjective allegations" rather than objective evidence. *Doc. 27* at 15. For example, the Commissioner notes that on her 2017 Questionnaire, CNP Oldham wrote "per patient" on each page of findings. *Id.* (citing AR at 384-85). The Commissioner intimates that CNP Oldham's "findings" are, thus, more indicative of Plaintiff's subjective assessment of his own limitations than the product of CNP Oldham's medical judgment. Further, the Commissioner notes that in a February 8, 2018 treatment note, CNP Oldham reported advising Plaintiff that despite what the disability form said, he would "have to undergo [an] evaluation with [a] provider who works for state to evaluate disability." *Id.* (citing AR at 560). These references lend some credence to the ALJ's determination that CNP Oldham's opinions are not supported by objective evidence.

More importantly, the ALJ's discussion of the relevant objective medical findings provides substantial evidence for her supportability analysis, as those findings do not always support CNP Oldham's opinions. First, the ALJ summarized reports from the imaging of Plaintiff's knees, shoulders, hands, and lumbar spine. AR at 20. With regard to Plaintiff's knees, the ALJ noted that he had "a detached fragment at the superolateral aspect of the patella of the right knee" but "*no significant degenerative changes* in either knee." AR at 20 (citing AR at 352-53) (emphasis added). Further, she observed that imaging of Plaintiff's shoulders revealed "an AC joint dislocation . . . , multiple calcified/ossified bodies within nearby soft tissues, and a glenohumeral joint intact *without significant degenerative changes*" in the right shoulder and "*minimal* left AC joint degenerative changes" in the left shoulder. AR at 20 (citing AR at 2F) (emphasis added). The ALJ also noted that imaging of Plaintiff's hands showed "*minimal*

osteophytes in the second and third MTP joints" in his right hand. AR at 20 (citing AR at 352-53) (emphasis added). Finally, the ALJ explained that "[i]maging of the lumbar spine showed spondylosis, with partial sacralization of the L5 with associated degenerative change." AR at 20-21 (citing AR at 352-53).

Consistent with the imaging reports of Plaintiff's lumbar spine and shoulders, the ALJ acknowledged Plaintiff's rheumatologist's assessment of "primary generalized osteoarthritis and lumbar spondylosis" as well as findings by Plaintiff's other medical sources of decreased range of motion in his lumbar spine and shoulders. AR at 21 (citing AR at 420-22; 536-39; 560-80). Additionally, the ALJ observed reports from Plaintiff's physical therapist that Plaintiff's L3-5 facets were "not opening[,]" AR at 22 (citing AR at 616), and Dr. Ward's finding of a "positive FABER test[11] bilaterally," AR at 22 (citing AR at 538).

In contrast, however, the ALJ also highlighted various *normal* objective medical findings in the record, including no swelling or edema of Plaintiff's joints, no evidence of inflammatory arthritis, no "x-ray findings to suggest rheumatoid arthritis[,]" a negative McMurray's test,[12] a negative sitting leg raise test,[13] and "normal" strength in his extremities. AR at 21 (citing AR at 390-408, 420, 425, 431, 538, 554-605, 614). This

---

[11] The FABER test, otherwise known as Patrick's test, is used to diagnose sacroiliac joint dysfunction. *Diagnosis for Sacroiliac Joint Pain*, WebMD, https://www.webmd.com/back-pain/si-joint-dysfunction-diagnosis (last visited Jan 29, 2022).

[12] McMurray's test is used to identify meniscal tears in a patient's knees. *McMurray's Test*, Physiopedia, https://www.physio-pedia.com/McMurrays_Test (last visited Jan. 29, 2022).

[13] The leg raise test is "a commonly used test to identify an impairment in disc pathology or nerve root irritation . . . ." *Straight Leg Raise Test*, Physiopedia, https://www.physio-pedia.com/Straight_Leg_Raise_Test (last visited Jan. 29, 2022).

summary of objective evidence offered by the ALJ in her decision, together with her explicit finding that CNP Oldham's opinions were "unsupported" by objective evidence, leads the Court to conclude that her supportability assessment passes muster. The Court might have reached a different conclusion had it weighed the evidence *de novo*, but it must defer to the ALJ's findings when, as here, those findings are supported by substantial evidence. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

In sum, the Court finds that, contrary to Plaintiff's contentions, the ALJ supplied an adequate analysis of the consistency and supportability of CNP Oldham's opinions. Indeed, the ALJ's finding that CNP Oldham's opinions were not persuasive can be described as a reasonable one supported by substantial evidence.

### C.   The ALJ committed reversible error in analyzing the opinions of Dr. Ward.

Plaintiff asserts a sub-argument in conjunction with his claim that the ALJ erred in her assessment of CNP Oldham's opinions: that she likewise erred in her assessment of the similar opinions of consultative examiner Em Ward, M.D., Ph.D., as she "provided *no* evaluation of [the] persuasiveness" of those opinions. *Doc. 23* at 18 (citing AR at 23-24). Plaintiff emphasizes that the ALJ failed to explain how she considered either the supportability or consistency of Dr. Ward's opinions. *Id.* (citing 20 C.F.R. § 416.920(a)(b)). The Commissioner concedes that the ALJ omitted an explicit finding as to the persuasiveness of Dr. Ward's conclusions. *Doc. 27* at 16-17. The Commissioner reasons that while "it may have been preferable for the ALJ to say more

21

with respect to Dr. Ward's conclusions," such conclusions "arguably lack a requisite level of specificity." *Id.* at 17. Further, the Commissioner insists that any error by the ALJ with regard to Dr. Ward was harmless. *Id*.

The ALJ provided a thorough discussion of Dr. Ward's evaluation of Plaintiff, detailing many of her objective medical findings, such as "a slightly widened gait with a slight limp favoring the right"; "a slightly decreased cervical extension"; "a normal range of motion at the waist"; a negative "sitting leg raise . . . bilaterally"; a "positive FABER test bilaterally"; "normal grip strength and hand exam"; "normal upper body extremity strength bilaterally"; "upper extremities range of motion . . . limited to 90 degrees due to pain"; "bilateral first MTP joint tenderness"; "normal lower extremity strength"; "frequent[] shift[ing] in his chair"; ability "to balance on each foot"; ability "to squat and touch floor with knee pain"; and ability to "move[] out of the chair and onto the exam table without difficulty." AR at 22. The ALJ also provided a summary of certain of Dr. Ward's conclusions:

> Dr. Ward's impression was joint pain, which was mild to moderate generalized osteoarthritis. Dr. Ward noted the claimant was asymptomatic with regard to polycythemia. Dr. Ward noted "frequent squatting may or may not be problematic" and overhead reach appears "restricted."

AR at 23 (citing AR at 536-39). The Court's review of Dr. Ward's records reveals that the ALJ's summary was mostly accurate, except that she failed to include Dr. Ward's opinion that "[c]urrently, it appears that [Plaintiff] needs to move or re-position frequently. It is unclear if this is solely because of pain." *Compare* AR at 23, *with* AR at 539.

The Commissioner suggests that Dr. Ward's conclusions were too vague to necessitate consideration or discussion by the ALJ. *Doc. 27* at 16-17. She recites the new regulation's definition of a "medical opinion" – "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities . . . ." *Id.* at 17 (quoting 20 C.F.R. § 416.913(a)(2)). Among the abilities enumerated within the regulation are the ability to sit, stand, walk, lift, carry, push and pull. *See id.* The Commissioner acknowledges that it is a "close call" whether Dr. Ward's conclusions meet the definition of a medical opinion, but she emphasizes that the Tenth Circuit has held, under the prior regulations, that terms such as "probably" were not concrete enough to constitute a medical opinion. *Id.* at 16-17 (citing *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016)).

In the Court's view, Dr. Ward's impressions were somewhat equivocal concerning Plaintiff's ability to squat. However, her finding that Plaintiff needed to frequently move and reposition was more concrete. As Plaintiff points out, Dr. Ward's alternating sit/stand limitation was supported by her observation of "[Plaintiff] rising to his feet after 15 minutes of 'frequently shifting' in his chair." *Doc. 23* at 18 (citing AR at 539). Plaintiff further asserts that, by failing to discuss this critical opinion, the ALJ ran afoul of the rule against picking and choosing, or "using portions of evidence favorable to [her] position while ignoring other evidence" *Id.* (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).

The Court finds that, at minimum, Dr. Ward offered a relevant medical opinion that Plaintiff required the ability to alternate between sitting and standing frequently.

This opinion was sufficiently concrete to require an assessment of the persuasiveness of Dr. Ward's opinions. Because the ALJ provided no such assessment, she failed to meet the dictates of 20 C.F.R. § 416.920c.

The Commissioner insists that any error in assessing the persuasiveness of Dr. Ward's opinions was harmless for two reasons. First, she argues that because "the ALJ accepted that Plaintiff should only occasionally stoop, crouch, kneel, crawl, and rarely reach overhead[,] . . . . the [RFC] assessment was more restrictive than Dr. Ward's conclusions." *Doc. 27* at 17 (citing AR at 18). However, the same cannot be said of Dr. Ward's opinion that Plaintiff required an alternating sit/stand option, as the RFC does not account for such a limitation. Accordingly, the Court rejects this argument.

Second, the Commissioner offers the following: "although the ALJ did not discuss Dr. Ward's conclusion that Plaintiff currently needed to move or reposition frequently, any error was harmless because the ALJ's decision reflects that she considered but did not accept Plaintiff's claim that she needed to frequently change position." *Doc. 27* at 18 (internal citations omitted). According to the Commissioner, because the ALJ explicitly acknowledged Plaintiff's testimony that he could sit for only five minutes before needing to change position, the Court should infer that she rejected his testimony and found no such limitation. *Doc. 27* at 18. The Court is not persuaded.

In her decision, the ALJ did recount Plaintiff's testimony that "he could sit for five minutes[] but would then need to change positions for five minutes due to knee and low back pain." AR at 20. While the ALJ determined that Plaintiff's "subjective complaints exceed[ed] the clinical examination findings," AR at 20, she made no mention of the

*medical opinion* by Dr. Ward that Plaintiff needed to frequently reposition. Nor did she discuss the similar opinion offered by CNP Oldham.

The ALJ's omission of any discussion of this opinion -- offered by both Dr. Ward and CNP Oldham -- leaves the Court unable to follow the Court's reasoning. Moreover, the Court agrees with Plaintiff that if the ALJ *had* incorporated the alternating sit/stand option into the RFC, it would have rendered him disabled. The vocational expert testified that a hypothetical person with the RFC determined by the ALJ, who was Plaintiff's age and had his education and work experience, could perform six different jobs in the national economy. AR at 52-53. But, critically, the vocational expert testified that these jobs would become unavailable if that individual required an accommodation to frequently change positions between sitting and standing. *See* AR at 54. Accordingly, the ALJ's error in failing to consider the persuasiveness of Dr. Ward's opinions cannot be described as harmless. Ultimately, the ALJ's error warrants remand so that she can consider the persuasiveness of Dr. Ward's opinions.

### D.    Remaining claims of error.

Plaintiff advances additional arguments in support of his Motion to Remand. However, because the Court concludes that remand is required as set forth above, it will not address these other claims. *See Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) (explaining that the reviewing court does not reach issues that may be affected on remand).

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision with Supporting Memorandum (*Doc. 23*) is granted. A final order

pursuant to Rule 58 of the Federal Rules of Civil Procedure will be entered concurrently

herewith.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent